**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

In re: MICHAEL A. ZWERK,

       Debtor.

_____/

JUDITH ZWERK,

       Appellant,

v.

MICHAEL A. ZWERK,

       Appellee.

_____/

Case No. 08-14512
Bankruptcy No. 03-924779

**OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT'S
"ORDER RE: DEBTOR'S MOTION FOR CLARIFICATION"**

     On October 7, 2008, Bankruptcy Judge Daniel S. Opperman of the United States Bankruptcy Court for the Eastern District of Michigan entered an order clarifying a previously stipulated confirmation order.  The October 7 order clarified that the confirmation order was intended to dispose of all pending litigation between the parties, including a civil suit then pending in Tuscola County Circuit Court.  Appellant Judith Zwerk maintains the confirmation order did not contemplate such a result, and filed this timely appeal.  The appeal has been fully briefed and the court concludes a hearing is unnecessary.  *See generally* E.D. Mich. LR 7.1(e)(2).  For the reasons stated below, this court will affirm the bankruptcy court's judgment, as modified by its order of clarification.

## I.  BACKGROUND

With one significant exception, the facts involved in this dispute are uncontested. Appellee, faced with a large property settlement as a result of his divorce from Appellant, filed for Chapter 11 bankruptcy. At the time of Appellee's filing, he was also one of several defendants in a lawsuit filed by Appellant and pending in Tuscola County Circuit Court ("Tuscola lawsuit"). In an apparent effort to resolve Appellee's bankruptcy petition, the parties entered into a stipulated agreement which is at the heart of this appeal. Specifically, the parties dispute the meaning of a key provision of that agreement:

> That the Class 5 claim of creditor, JUDITH A. ZWERK, is modified to provide that Debtor shall pay her an all-inclusive settlement sum of $1,150,000 ("Settlement Sum") on or before April 10, 2008 ("Due Date") as payment in full of any and all claims, judicial liens, mortgages, issues relating to her entitlement to land rents, interest on any liens and on the alimony in gross award set forth in the parties' judgment of divorce, etc.

After the bankruptcy court entered the stipulated agreement on March 17, 2008, and after Appellee had paid Appellant $1,150,000, Appellee was contacted by Appellant's counsel in the Tuscola lawsuit, who informed Appellee of Appellant's intent to pursue the pending lawsuit. Appellee, believing the above provision required his dismissal from the Tuscola lawsuit, filed a motion for clarification with the bankruptcy court. After briefing and oral argument, the bankruptcy court agreed with Appellee's position and ordered Appellee's dismissal from the Tuscola lawsuit.[1] Throughout these proceedings, Appellant has maintained that "the only discussions between the parties

---

[1] Only Appellee was dismissed from the Tuscola lawsuit; his co-defendants remain.  (10/7/08 Bankr. Order.)

during the settlement negotiations involved the alimony in gross provision" of the parties' judgment of divorce. (Appellant's App. at 1.) As such, Appellant contends any release from the Tuscola lawsuit was neither bargained for nor agreed to in the stipulated agreement. It is the scope of any release that forms the basis for this appeal.

## II. STANDARD

### A. Jurisdiction

Appellant appealed the October 7, 2008 order within the ten day period provided for timely appeals under Federal Rule of Bankruptcy Procedure 8002. Upon such timely notice, this court has jurisdiction over Appellant's appeal pursuant to 28 U.S.C. § 158(a), which governs appeals from final orders of the bankruptcy court. Title 28 of the United States Code, section 158 states in relevant part:

> (a) The district courts of the United States shall have jurisdiction to hear appeals
>
> > (1) from final judgments, orders, and decrees;
> > . . .
> > (3) with leave of the court, from other interlocutory orders and decrees; . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title.

28 U.S.C. § 158(a). A final order of a bankruptcy court may be appealed as of right under § 158(a)(1). *In re ASC Inc.*, 386 B.R. 187, 193-94 (E.D. Mich. 2008).

### B. Standard of Review

In reviewing a bankruptcy appeal, the district court must accept as correct the bankruptcy court's findings of fact, unless they are clearly erroneous. Fed. R. Bankr. P. 8013; *see also In re Wilkinson*, 196 F. App'x 337, 341 (6th Cir. 2006) (quoting *In re*

3

*Gardner*, 360 F.3d 551, 557(6th Cir. 2004)). The bankruptcy judge's conclusions of law are reviewed *de novo*. *Wilkinson*, 196 F. App'x at 341; *see also In re Caldwell*, 851 F.2d 852, 857 (6th Cir. 1988).

### III.  DISCUSSION

Appellant puts forth three main arguments on appeal. First, she argues the bankruptcy court was without jurisdiction to clarify the settlement agreement. Appellant next claims the Tuscola lawsuit is not dischargeable, pursuant to 11 U.S.C. § 523. Finally, Appellant asserts the plain language of the settlement provision excludes the Tuscola lawsuit from its coverage. The court will address each argument in turn.

### A.  Bankruptcy Court Jurisdiction

Appellant asserts that because there was no explicit "retention of jurisdiction by the bankruptcy court as to the settlement," the court was without authority to issue an order clarifying its approval of the settlement. (Appellant's App. at 20.) As support, Appellant points to two cases[2] for the proposition that a bankruptcy court does not retain jurisdiction "to enforce a post-confirmation settlement agreement between [a] debtor and creditor." (*Id.*) Appellant's characterization of both cited case overgeneralizes the holdings, however. In those cases, the bankruptcy court did not have jurisdiction to entertain what was essentially a "claim for breach of contract, part of the consideration for which was dismissal of an earlier federal [proceeding]." *Beaver Office Prods.*, 197 B.R. at 839 (quoting *Kokkonen*, 511 U.S. 375, 114 S. Ct. at 1677)). Here, Appellee asked the bankruptcy court for clarification of a prior order, not the enforcement of the

---

[2] Appellant cites to *In re Beaver Office Prods., Inc.*, 197 B.R. 836 (Bankr. N.D. Ohio 1996) and *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994).

settlement agreement through a new breach of contract cause of action. There is no "new" lawsuit at all, but merely a request for the issuing court to clarify its previous order. The court is unaware of any legal authority, and Appellant provides none, where an issuing court found itself without jurisdiction to clarify an order it had issued only a short while earlier. In fact, the court is aware of authority to the contrary. *See In re Applewood Chair Co.*, 203 F.3d 914, 918 (5th Cir. 2000) (upholding bankruptcy court's consideration of a motion for clarification on the court's previous order). Further, from a practical standpoint, it would make little sense for any court to enter an order which it could not later modify or clarify, either on motion or *sua sponte*. *See, e.g.*, E. D. Mich. LBR 9024-1, "Post-Judgment Motions." The issuing court is in the best position to provide guidance, should the parties require it. Appellant's argument that the bankruptcy court cannot clarify its own order is without merit.

### B. Dischargeability

Appellant also argues that specific statutory provisions of the bankruptcy code prohibit the discharge of the Tuscola lawsuit. (Appellant's App. at 19.) She points to 11 U.S.C. § 523, which precludes the discharge of "any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). Another provision, § 523(a)(19), prohibits the discharge of a debt "that is for the violation of any of the Federal securities laws . . . or common law fraud, deceit, or manipulation in connection with the purchase or sale of any security." Because the Tuscola lawsuit contains allegations that Appellee "committed fraud, [and] transferred stock without . . . authority." (Appellant's App. at 19), Appellant contends it is the type of item specifically

excluded from discharge under sections 11 U.S.C. §§ 523(a)(2)(A) and (a)(19).  The court cannot agree.  "It is well established that when the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms."  *Till v. SCS Credit Corp.*, 541 U.S. 465, 486 (2004) (internal quotation omitted).  The plain language of the relied upon sections prohibits discharge of any debt for "money, property, services . . . obtained by false pretenses," "violations of . . . Federal securities laws," or "common law fraud."  11 U.S.C. §§ 523(a)(2)(A), (a)(19)(A).  The statutory language does not prohibit the discharge of a lawsuit through stipulated agreement.  Nor does the fact that the lawsuit contained allegations of fraud bring it 11 U.S.C. § 523.  The end-result of the Tuscola lawsuit may or may not be a finding of fraud, which in turn may or may not bring it within 11 U.S.C. § 523.  But at the time the Tuscola lawsuit was discharged, this court cannot conclude any debt premised on fraud had been established.  The statute is silent as to whether a lawsuit, which may later legally establish a covered debt, is to be prohibited from discharge.  Appellant provides no legal authority construing 11 U.S.C. § 523 to provide such coverage.  Without more, the court agrees with the bankruptcy court and finds that the Tuscola lawsuit was eligible for discharge under the parties stipulated agreement.

### C.  Language of Agreement

Finding that the bankruptcy court had jurisdiction to rule on Appellee's motion to clarify, and finding that the Tuscola lawsuit was not precluded from discharge under 11 U.S.C. § 523, the court now turns to the actual language of the stipulated settlement agreement.  Appellant argues that "there had never been a discussion as to the

discharge of the Tuscola County lawsuit" (Appellant's App. at 14-15) before or during the negotiations of the settlement agreement. "Under Michigan law, contracts are not open to judicial interpretation and must be enforced as written, 'absent ambiguity or internal inconsistency.'" *In re Plastech Engineered Prods., Inc.*, 382 B.R. 90, 113 (Bankr. E.D. Mich. 2008) (quoting *Universal Underwriters Ins. Co. v. Kneeland*, 628 N.W.2d 491, 494 (Mich. 2001)). "Contract terms are ambiguous if they 'are reasonably and fairly susceptible to multiple understandings and meanings.'" *Plastech*, 382 B.R. at 113 (quoting *Equitable Life Assurance Soc'y of the United States v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998)). If the contract language is clear, however, "the contract is construed as a matter of law and enforced as written." *In re Big Buck Brewery & Steakhouse*, 08-CV-12471, 2009 WL 56044, *3 (E.D. Mich. Jan. 8, 2009) (applying Michigan rules of contract construction in Chapter 11 appeal.)

    Here, the stipulated agreement states:

> That the Class 5 claim of creditor, JUDITH A. ZWERK, is modified to provide that Debtor shall pay her an all-inclusive settlement sum of $1,150,000 ("Settlement Sum") on or before April 10, 2008 ("Due Date") as payment in full of any and all claims, judicial liens, mortgages, issues relating to her entitlement to land rents, interest on any liens and on the alimony in gross award set forth in the parties' judgment of divorce, etc.

(Appellant's App. at 6.) Appellant contends the phrase "set forth in the parties' judgment of divorce" was intended, and should be read, to apply to every item in the list before it. (Appellant's App. at 8.)

    Under Appellant's reading, the list would comprise "*any and all claims* set forth in the parties' judgment of divorce," "*judicial liens* set forth in the parties' judgment of divorce," "*mortgages* set forth in the parties' judgment of divorce," "*issues relating to her*

7

*entitlement to land rents* set forth in the parties' judgment of divorce," and "*interest on any liens* set forth in the parties' judgment of divorce."  Appellant argues that because the Tuscola lawsuit was not included in the parties' judgment of divorce, it was not intended to fall under the settlement clause.  Appellant's position contradicts a common-sense reading of the above paragraph.  It is clear that the paragraph comprises a list of items, only *one* of which is "the alimony in gross award set forth in the parties' judgment of divorce, etc."

The plain words of the list, giving effect to the punctuation contained within, are understood to require Appellee to "pay . . . [a] sum . . . as payment . . . of" (1) claims, (2) judicial liens, (3) mortgages, (4) issues relating to her entitlement to land rents, (5) interest on any liens and (6) on the alimony in gross award set forth in the parties' judgment of divorce, etc.  To apply the clause "set forth in the parties' judgment of divorce" so as to modify every preceding item ignores the "and" which proceeds it in the list.  The clause, in fact, modifies only "the alimony in gross award."[3]  The words of the stipulated agreement, given their obvious and ordinary meanings, comprehend coverage for any and all claims between the parties, which would, obviously, include the Tuscola lawsuit.[4]

---

[3] A minor grammatical problem in the form of a possibly extraneous preposition can be seen by collapsing the list further to reveal that Appellee must "pay . . . [a] sum . . . as payment . . . of . . . on [sic] the alimony in gross award set forth in the parties' judgment of divorce," but this the court sees as a mere drafting error that neither changes the otherwise plain meaning of the list nor deflects the court from its analysis.

[4] The court is cognizant that, where the language at issue is clear and unambigious, the court should "assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence."  *In re Spinnaker Indus., Inc.*, No. C2-06-902, 2007 WL 2874800, *2 (S.D. Ohio Sept. 27, 2007) (quoting *Int'l*

Appellant attempts to bolster her interpretation by pointing to another section of the agreement, which states,

> In the event that Debtor fails to pay the Class 5 creditor the Settlement Sum on or before the Due Date, then the automatic stay against her shall be lifted as to her only by filing an affidavit of verification and shall have the right to enforce her claim for the balance owed to her in either this Court or the Saginaw County Circuit court.

(*Id.* at 8.) Appellant argues, if the agreement were intended to include claims in the Tuscola lawsuit, the last sentence would have included "and/or the Tuscola County Circuit Court." (*Id.*) Appellant's logic does not persuade. The clause merely identifies the courts available for enforcement should Appellee fail to meet his obligations under the settlement agreement. The Tuscola court, as a venue, was not involved in the divorce property settlement or the bankruptcy that resulted from that property settlement. In short, the Tuscola court would have no reason to become involved if Appellee failed to meet his burdens under the Chapter 11 settlement agreement. The court cannot conclude that the agreement's failure to mention the Tuscola court, in light of the other portion of the agreement already discussed, demonstrates a clear intention to exclude the Tuscola lawsuit from coverage.

---

*Multifoods Corp v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002)). Nonetheless, if extrinsic evidence were to be considered, it strongly supports Appellee's position that the Tuscola lawsuit was considered part of the settlement agreement. As one example, the bankruptcy judge questioned Appellant's counsel as to whether there were any matters *not* covered under the agreement. Appellant's counsel noted three items, but not the Tuscola lawsuit. (Hr'g Tr. 4, Mar. 6, 2008.) Appellant herself confirmed this understanding. (*Id.* at 6.) As the Tuscola lawsuit was filed by Appellant and her same counsel on October 30, 2001 and amended on January 13, 2004 (Appellant's App., Ex. A at 11), they were aware of its existence during the March 6, 2008 confirmation hearing.

Finally, Appellant argues that the settlement agreement was only intended to cover "class 5 claims," which "only applied to the alimony in gross provision of the judgment of divorce." (Appellant's App. at 15.)  Quite simply, the argument ignores the words of the agreement, which state that the "[c]lass 5 claim of creditor, JUDITH A. ZWERK, is modified to provide that . . ."  Whatever Appellant may have originally considered "class 5 claims" to include was "modified" through stipulated agreement, which, as discussed above, included items in addition to the "alimony in gross provision of the judgment of divorce."  The contract language is unambiguous and not susceptible to any other interpretation.  The court concludes, as a matter of law, that the bankruptcy court was correct in construing the stipulated settlement agreement to have contemplated the dismissal of the Tuscola lawsuit.

## IV.  CONCLUSION

For the reasons stated above, IT IS ORDERED that the bankruptcy court's October 7, 2008 "Order Re: Debtor's Motion for Clarification" is AFFIRMED.


        s/Robert H. Cleland
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated: March 11, 2009

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 11, 2009, by electronic and/or ordinary mail.

        s/Lisa G. Wagner
        Case Manager and Deputy Clerk
        (313) 234-5522